**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

_____

| | | |
|---|---|---|
| **BILLY JOHNSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **No. 13-2219-STA-tmp** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

**ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
DENYING CERTIFICATE OF APPEALABILITY
CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

_____

Before the Court is a Motion Pursuant to 28 U.S.C. § 2255 to Vacate, Set Aside or

Correct Sentence by a Person in Federal Custody (the "§ 2255 Motion") filed by Petitioner Billy

Johnson ("Johnson"), Bureau of Prisons register number 21384-076, an inmate at USP Lee in

Jonesville, Virginia (§ 2255 Motion, ECF No. 1.)  For the reasons stated below, Johnson's §

2255 Motion is **DENIED**.

**BACKGROUND**

**I.      Criminal Case Number 07-20026**

On January 23, 2007, a federal grand jury sitting in the Western District of Tennessee

returned a multiple count indictment against Johnson related to an alleged murder-for-hire

scheme whereby Johnson hired another man to kill his mother Martha Johnson.  On August 14,

2008, a grand jury returned a superseding indictment against Johnson, charging him with one

count of conspiring with another to use interstate commerce facilities to commit murder-for-hire

in violation of 18 U.S.C. § 1958(a); one count of traveling in interstate commerce with the intent to commit murder-for-hire in violation of 18 U.S.C. § 1958(a) and 2; and eleven counts of making false declarations before a grand jury in violation of 18 U.S.C. § 1623. (*See* Superseding Indictment, *United States v. Billy Johnson*, 2:07-cr-20026-STA (W.D. Tenn.), ECF No. 46.) Johnson entered a plea of not guilty and proceeded to a jury trial on March 23, 2009. The United States Court of Appeals for the Sixth Circuit summarized the proof at trial as follows:

> Prior to her murder on 22 July 1999, Martha Johnson lived alone in a trailer-home in Tipton County, Tennessee. Ms. Johnson owned approximately 520 acres of land, including land in Tipton County she primarily used as a cattle farm. She also owned and operated a local bar named "JJ's." In July 1999, the value of her total assets was listed at $1,162,850, with a net worth of $727,918. Testimony indicated that one of Ms. Johnson's two surviving sons, Billy Johnson, worked on his mother's farm and at her bar.

> Testimony during the trial indicated that Ms. Johnson and Billy disagreed over the use and possible development of the acreage belonging to Ms. Johnson. The Defendant sought to develop portions of his mother's acreage into a subdivision, but Ms. Johnson insisted on continuing to farm the land while postponing any extensive development. Billy Archer and Jeremy Lawrence testified to witnessing Ms. Johnson and her son, Billy, engage in heated arguments over the issue. Jerry Craig, a personal friend of Ms. Johnson and fire chief of the City of Covington, Tennessee, testified that in the weeks prior to her death, Ms. Johnson made comments about disinheriting her sons.

> According to the testimony of Lee Thomas, a worker on Ms. Johnson's land, the Defendant offered Thomas $10,000 in the fall of 1998 to murder his mother, with a portion up front and the remainder to be paid after completion of the job. The Defendant revisited his offer a month later while the two were, again, working together. Thomas again refused. Tipton County Sheriff's Deputy Ronnie Coleman corroborated Thomas' story, testifying that, a few months prior to the murder of Ms. Johnson, Thomas informed the Sheriff that he had been approached by Billy Johnson and offered a sum of money to kill the Defendant's mother. At the time he told Sheriff Coleman of the Defendant's offer, Thomas was in jail for burglarizing a trailer belonging to Martha Johnson.

> According to the testimony of Jeremy Lawrence, a fellow farm worker of Ms. Johnson and a friend of the Defendant, Billy Johnson offered money to Lawrence at one point in 1998 to commit a murder. Mr. Lawrence testified the

Defendant showed him a picture of Ms. Johnson to indicate the person whom he sought to have murdered.

According to the testimony of admitted murderer Danny Winberry, the Defendant solicited him at JJ's bar in July 1999 to murder Ms. Johnson. The two agreed on a price of $50,000 for the murder, spoke by telephone over the following two weeks, and then met at a Wal–Mart parking lot in Covington, Tennessee. In the parking lot the Defendant patted down Winberry as a precaution, then gave him $5,000 and a key to his mother's trailer. Winberry understood that he would receive the remaining $45,000 when the Defendant collected on his mother's life insurance policy. According to Winberry, the Defendant called him from a payphone on 19 July 1999, the Monday prior to the murder and instructed him to murder his mother while the Defendant was away on a trip to Hot Springs, Arkansas. Winberry testified Billy Johnson explained his mother would be in Lauderdale County on both Wednesday and Thursday, and would return to her residence around 5:00 p.m. or 6:00 p.m. The Defendant considered either day suitable for the murder according to Winberry. Telephone records to Winberry's home phone corroborate two pay telephone calls that evening from "Jac's Grocery" located about four minutes' drive from the Defendant's residence. On Tuesday, 20 July 1999, Billy Johnson left for Hot Springs, Arkansas with his family and friends.

The evening before the murder, Winberry asked his then girlfriend, Haynes Johnson, to serve as an alibi for a robbery. She agreed and testified to a conversation in which Winberry asked her, "what if I had to kill somebody? And I said that would be different. And I asked him if he was going to rob somebody, and he said that he didn't have to rob anybody because he had the keys." (Tr. 1151). Haynes Johnson stated that Winberry also showed her a wad of cash that evening which he told her amounted to $5,000.

According to the testimony of farmhand Billy Archer, Ms. Johnson arrived at her residence at approximately 5:15 p.m. on 22 July 1999, where she dropped off Archer and another farm worker who left for home in their own trucks. Archer testified:

We was on the other side of Fort Pillow cutting hay and her mower had broke down, and we needed to take a piece off of it and go to have it welded. So we quit early and carried it up to Darling's Welding Shop and dropped it off. And then she carried Duke by the grocery store and got some—he got some groceries, and she said, well, I need to get something for lunch tomorrow and everything . . . . So we went to Save A Lot and came to her house, and we got to her house probably I want to say approximately about 5:15 that evening. And she went in the house, and I got in my truck and went to my house. (Tr. 539–40).

Winberry testified that on the evening of 22 July 2009 he bludgeoned Ms. Johnson to death with an antique iron he found in the house; he then placed a

kerosene lamp on a lit stove to set the trailer on fire once the lamp broke from the heat. Winberry went home to change his clothes and told Haynes Johnson they needed to go out "to be seen." Haynes Johnson testified that Winberry asked her whether a glass kerosene lamp would break and cause a fire if placed on a lit stove. Winberry testified that he returned to the trailer in the early morning hours of 23 July 1999 to find the trailer still intact. Using a lighter and a rag he had obtained from Haynes Johnson, Winberry then applied an accelerant to set a fire in the bedroom of Ms. Johnson's trailer. An autopsy performed on Ms. Johnson revealed that she died from blunt force trauma to the head.

Haynes Johnson testified that when she learned of the murder she confronted Winberry. She testified that Winberry later told her he was involved and some three weeks after the murder explained that Billy Johnson would have no problem killing him because the Defendant hired him to "kill his own mother." (Tr. 1160–63, 1171).

Shortly after learning of Winberry's involvement, Haynes Johnson confided in her friend Peggy Sue Jackson, who also testified at trial. Jackson related that Haynes Johnson confided about the telephone calls Winberry received, his use of her as an alibi, his request for dish rags and lighter fluid on the night of the murder, and her confrontation with Winberry. During the investigation, Haynes Johnson eventually implicated Winberry and Billy Johnson. Evidence emerged during the trial, in testimony from Lisa and Amanda Barnes, that the Defendant had told Lisa Barnes not to assist Captain John Fletcher of the Tipton County Sheriff's Department in his investigation when she initially reported a suspicious truck parked near Ms. Johnson's trailer the night of the murder.

After his mother's death, Billy Johnson was unable to locate an executed will. Testimony from attorney J. Thomas Caldwell, indicated the Defendant filed the estate intestate, precipitating a situation in which Defendant's brother, Jerry Edwards, and Defendant's seventeen year-old nephew Hunter Edwards, were each entitled to one-third of the estate. Defendant administered the estate and convinced the other two inheritors the estate was worthless. Both inheritors submitted waivers of any claims to the estate. While still a minor, Hunter Edwards signed the waiver without the presence of a guardian.

As a result, Billy Johnson inherited his mother's full estate. He sold several tracts of land to James Burlison, a neighbor. He also received $102,000 in life insurance proceeds, which were mailed to the Defendant from a life insurance company in Florida. At trial, Jonathan Esworthy, a forensic auditor with the Bureau of Alcohol, Tobacco, and Firearms, testified the Defendant obtained a profit of $611,893.56 from the sale of his mother's estate.[1]

---

[1] *United States v. Johnson*, 443 F. App'x 85, 89-91 (6th Cir. 2011).

Following a twelve day trial of the issues, the jury returned a verdict of guilty as to all counts. On October 22, 2009, the Court sentenced Johnson to a term of life imprisonment on each of the three murder-for-hire counts and a term of 60 months on each of the perjury counts to be followed by three years supervised release and imposed a special assessment of $100. (*See* Judgment, ECF No. 143.) On January 14, 2010, the Court ordered Johnson to make restitution to his mother's estate in a single, lump sum payment of $611,893.56 pursuant to 18 U.S.C. § 3664(f)(3)(A). The Sixth Circuit affirmed the Court's judgment on October 5, 2011, and the United States Supreme Court denied Johnson's petition for a writ of certiorari.

**B.      Civil Case Number 13-2219**

On April 9, 2013, Johnson filed his *pro se* § 2255 Motion, raising one claim of ineffective assistance of trial counsel, one claim of prosecutorial misconduct, and one claim of ineffective assistance of appellate counsel. First, Johnson states that trial counsel was ineffective by failing to challenge the government's proof about Johnson's financial gain from his mother's murder and therefore his motive to commit the crimes. According to Johnson, the jury did not hear proof about payments and interest due on his mother's assets, including cattle, farm expenses, or her trailer park. Trial counsel failed to investigate these additional facts and consequently failed to present this exculpatory evidence to contest the testimony of the ATF forensic auditor. Johnson speculates that had this proof been introduced, the evidence may have created reasonable doubt about his financial motive to commit the crimes. Therefore, trial counsel's failure to develop and present this proof constitutes ineffective assistance.

Second, Johnson alleges that the prosecution coached his co-conspirator Danny Winberry and influenced Winberry to give false testimony. Johnson claims Winberry wrote a letter to Johnson's wife Vickie Johnson after the trial in which Winberry stated as follows: "I

said some things in court that was not true. I said what the prosecutor told me to day." Johnson asserts in conclusory fashion that if Winberry had testified truthfully, the outcome of the trial would have been different. Johnson adds that the prosecution engaged in misconduct and denied him due process by knowingly introducing inaccurate testimony. Third and finally, Johnson claims that appellate counsel was ineffective in presenting his case to the Court of Appeals and the Supreme Court. Johnson also claims that appellate counsel failed to inform him of the applicable filing deadline for his § 2255 Motion. Therefore, Johnson seeks to have his conviction set aside.

The United States has responded in opposition to Johnson's Motion. With respect to Johnson's first ground for relief, the government answers that Johnson fails to allege with particularity how trial counsel's performance fell below the objective reasonableness standard. As an initial matter, the government argues that ground one of Johnson's petition alleges only a claim of ineffective assistance of trial counsel, not a separate substantive claim about proof of motive. To the extent that the petition can be read to assert a substantive claim about the weight of the evidence, the claim is not a proper basis for relief under 28 U.S.C. § 2255. Johnson failed to raise the claim on direct appeal and has therefore procedurally defaulted the claim. The government goes on to argue that Johnson's ineffective assistance of trial counsel claim is conclusory and subject to summary dismissal. The petition refers to "the list" of assets in Johnson's mother's estate but does not identify what "the list" is or which payments and interest were not included in "the list." Johnson also fails to state the amounts of the supposedly omitted payments and interest. The petition completely fails to address the testimony of Jonathan Esworthy, the government's auditor who testified to the net worth of the estate. Not only has Johnson failed to identify the missing payments, Johnson has not shown what counsel

should have or could have reasonably done to introduce more evidence to the jury or how any purported errors by counsel resulted in any prejudice to Johnson.

The United States next argues that just as with his claim of ineffective assistance of trial counsel, Johnson has made only conclusory allegations of ineffective assistance of appellate counsel. The petition fails to allege how appellate claim failed to present any specific issue on direct appeal, what a reasonable appellate attorney would have done under the circumstances, or how Johnson's appellate counsel's representation fell below the standard of care. Johnson does not even allege how appellate counsel's supposed failings resulted in any prejudice to Johnson. Therefore, the government asks the Court to dismiss grounds one and three summarily and without convening an evidentiary hearing on the ineffective assistance of counsel claims.

As for ground two and Johnson's claim of prosecutorial misconduct, the United States argues that the claim is also subject to summary dismissal. Johnson has not shown with specific facts how the prosecution engaged in any misconduct. The petition refers to a letter from Winberry to Johnson's wife but does not attach the letter to the petition or introduce any proof from Mrs. Johnson about the contents of the letter. Johnson has not alleged when Winberry addressed the letter to Mrs. Johnson or what other statements the letter contained. Johnson only quotes two sentences from the letter where Winberry allegedly wrote that "some things" in his trial testimony were untrue and the prosecution coached Winberry's testimony. Johnson does not specify what those "things" were or which parts of his testimony were the products of the government's coaching. Although the petition alleges that the trial would have produced a different verdict had Winberry told the truth, the petition does not indicate what the truth is or how it actually would have altered the jury's decision. The government points out that the evidence in the case was overwhelming. As a result, the Court should dismiss ground two.

## STANDARD OF REVIEW

Johnson seeks habeas relief in this case pursuant to 28 U.S.C. § 2255(a). The statute reads as follows:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid."[2] A § 2255 motion is not a substitute for a direct appeal.[3] "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings."[4] "Defendants must assert their claims in the ordinary course of trial and direct appeal."[5] The rule, however, is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.[6]

---

[2] *McPhearson v. United States*, 675 F.3d 553, 558-59 (6th Cir. 2012) (internal quotation marks omitted).

[3] *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013); *see also Sunal v. Lange*, 332 U.S. 174, 178 (1947).

[4] *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976).

[5] *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

[6] *Id.*

Procedural default bars even constitutional claims that a defendant could have raised on direct appeal, but did not, unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise the issues previously.[7]  Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence."[8]

Dismissal of a § 2255 motion is mandatory if the motion, exhibits, and the record of prior proceedings show that the petitioner is not entitled to relief.[9]  If the habeas court does not dismiss the motion, the court must order the United States to file its "answer, motion, or other response within a fixed time, or take other action the judge may order."[10]  The petitioner is then entitled to reply to the government's response.[11]  The habeas court may also direct the parties to provide additional information relating to the motion.[12]  The petitioner has the burden of proving that he is entitled to relief by a preponderance of the evidence.[13]

## ANALYSIS

### I. Evidentiary Hearing

The Court holds that Johnson is not entitled to relief pursuant to 28 U.S.C. § 2255.  As a threshold question, nothing in Johnson's petition shows that an evidentiary hearing of the issues

---

[7] *See El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3dd 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors).

[8] *Bousley v. United States*, 523 U.S. 614, 662 (1998); *Vanwinkle v. United States*, 645 F.3d 365, 369-70 (6th Cir. 2011).

[9] Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules").

[10] *Id.*

[11] Rule 5(d), Section 2255 Rules.

[12] Rule 7, Section 2255 Rules.

[13] *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

is required in this case. When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is mandatory "to determine the truth of the petitioner's claims."[14] A court need not convene a hearing when the petitioner's claims "cannot be accepted as true because they are contradicted by the record, inherently incredible, or are conclusions rather than statements of fact."[15] As the petitioner, Johnson bears the burden of pleading and articulating sufficient facts to state a viable claim for post-conviction relief under 28 U.S.C. § 2255.[16] A § 2255 motion may be dismissed if it only makes vague, conclusory statements without substantiating allegations of specific facts and, consequently, fails to state a viable claim cognizable under § 2255.[17] Furthermore, a judge may depend on his own recollections of the trial where as in this case "the judge considering the § 2255 motion also presided over the trial."[18]

A petitioner must come forward with more than "bald assertions and conclusory allegations" to receive an evidentiary hearing.[19] An evidentiary hearing is no substitute for well-pleaded factual allegations. While the "burden on the petitioner in a habeas case for establishing an entitlement to an evidentiary hearing is relatively light," "it would be nonsensical to conclude that the petitioner could meet that burden simply" with a conclusory

---

[14] *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (citations omitted).

[15] *Id.* (citations omitted).

[16] Rule 2(b)(2), Section 2255 Rules ("The motion must state the facts supporting each ground.").

[17] *Chandler v. United States*, No. 13-2646-STA-cgc, 2016 WL 2766678, at *2 (W.D. Tenn. May 12, 2016) (citing *Ryals v. United States*, 2009 WL 595984, * 5 (E.D. Tenn. March 6, 2009); *Stamper v. United States*, 2008 WL 2811902, * 1 (E.D. Tenn. July 18, 2008)).

[18] *Id.* (citation omitted).

[19] *Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006); *Stanford v. Parker,* 266 F.3d 442, 460 (6th Cir.2001) ("[B]ald assertions and conclusory allegations do not provide sufficient ground to warrant requiring the state to respond to discovery or to require an evidentiary hearing.").

allegation of harm.[20]  Therefore, a habeas petition must first "specify . . . what could be discovered through an evidentiary hearing."[21]  This means the petitioner cannot rely on the dry bones of a bare habeas petition and then use the evidentiary hearing to put flesh on the claims.  Such a "circular" procedure "would entitle every habeas defendant to an evidentiary hearing on any issue."[22]

The Court holds that Johnson's petition fails to allege enough facts to entitle him to an evidentiary hearing.  Johnson has raised three grounds for relief but no facts to state a viable claim as to any of the grounds.  Concerning the claims of ineffective assistance of counsel, each of the claims consists only of the most indefinite assertions about what counsel failed to do.  And Johnson's petition does not show how counsel's alleged ineffectiveness caused Johnson any prejudice, either at trial or on appeal.  In his first claim, Johnson has simply asserted that trial counsel did not contest the government's proof about the value of Martha Johnson's estate or investigate certain debts that burdened the estate.  However, Johnson has alleged no facts to show the amount of the debts.  Without this critical fact, the petition does not show how the introduction of such evidence would have cast the government's proof in a different light.  Nothing in the petition alleges that counsel's deficient performance actually prejudiced Johnson or created a substantial likelihood of a different outcome of the trial.  In short, Johnson has alleged only a conclusory claim of ineffective assistance.

_____

[20] *Goldsby v. United States*, 152 F. App'x 431, 440 (6th Cir. 2005) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)).

[21] *Kitchen v. Bauman*, 629 F. App'x 743, 749 (6th Cir. 2015) (citing *Williams v. Bagley,* 380 F.3d 932, 977 (6th Cir. 2004)).

[22] *Renico*, 455 F.3d at 733 (quoting *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).

Johnson's allegations about the performance of appellate counsel fare no better. The petition's full allegation in support of this claim is as follows: "Ineffective assistance of appellate counsel in presenting claims on appeal to the 6th Circuit, presenting claims to the US Supreme Court, and properly informing me of the applicable 2255 filing deadlines." Johnson has alleged no facts to show how appellate counsel's representation fell below the objective reasonableness standard. Other than the fact that Johnson could not obtain a reversal of his conviction on appeal or persuade the Supreme Court to grant him a writ of certiorari, Johnson has also failed to allege how appellate counsel's performance caused Johnson to suffer prejudice. Such a skeletal claim of ineffective assistance simply fails to state a claim for relief and does not entitled Johnson to an evidentiary hearing.

Likewise, Johnson has failed to plead enough facts to show that his claim of prosecutorial misconduct in ground two is anything more than conjecture or speculation. The petition alleges that Winberry wrote a letter to Mrs. Johnson after the trial was complete and admitted in the letter that some of his trial testimony was not truthful. According to the petition, the Winberry letter also disclosed that the prosecution told Winberry what to say. Johnson has not attached a copy of the letter or any other proof to his petition to prove up the contents of the letter, much less shown what of Winberry's trial testimony was actually untrue. The petition also fails to allege any facts to show that the prosecution knowingly coached or procured the false testimony, as opposed to merely preparing Winberry to testify at trial without knowledge of any falsehood. What is more, the petition completely fails to allege what impact the purportedly false testimony had on the outcome of the proceedings. Just as with Johnson's claims of ineffective assistance of counsel, Johnson's claim of prosecutorial misconduct is too bald and conclusory to state a claim for relief. The Court concludes then that none of Johnson's

claims have actually given rise to a factual dispute, which would trigger the need for an evidentiary hearing. For these reasons, the Court declines to hold an evidentiary hearing on any of Johnson's claims.

Even accepting the vague and bare allegations of the petition as true, Johnson has not established any grounds for relief of a constitutional magnitude. The Court will consider the merits of each claim in turn.

## II. Ineffective Assistance of Counsel: Grounds One and Three

Johnson claims ineffective assistance of counsel, both at trial and on appeal. A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate deficient performance by counsel, a § 2255 petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness."[23] "A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[24]

To demonstrate prejudice, the petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[23] *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

[24] *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks and citations omitted).

different."[25]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[26]  The petitioner must do more than prove that counsel's errors had "some conceivable effect on the outcome of the proceeding;" the "errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[27]  A claim of ineffective assistance of counsel is a mixed question of fact and law.[28]

"Surmounting *Strickland*'s high bar is never an easy task."[29]

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve.  *Strickland*, 466 U.S., at 689-690, 104 S. Ct. 2052.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence."  *Id.*, at 689, 104 S. Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993).  The question is whether an attorney's representation

---

[25] *Strickland*, 466 U.S. at 694.  Additionally, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Id.* at 697.  If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient.  *Id.*

[26] *Id.*

[27] *Richter*, 562 U.S. at 104 (internal quotation marks and citations omitted); *see also id.* at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . .  The likelihood of a different result must be substantial, not just conceivable.") (citations omitted); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to rule out [a more favorable outcome] to prevail.  Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

[28] *McPhearson*, 675 F.3d at 559.

[29] *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.[30]

With respect to his claim of ineffective assistance at trial, Johnson alleges that trial counsel failed to investigate all of the financial information related to Martha Johnson's estate. "Deficient performance can be shown where counsel fails to make a reasonable investigation that they should have made."[31] A failure to investigate can take many forms.[32] Generally, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[33] In any event, "a heavy measure of deference to counsel's judgments" applies.[34]

The Court holds that Johnson has failed to carry his burden to establish either deficient performance by trial counsel or prejudice. Other than his summary conclusion about counsel's performance, Johnson has not shown that trial counsel failed to investigate this mitigating or exculpatory evidence. As the government correctly noted in its answer to the petition, Johnson asserts that a "list" used by the government at trial was incomplete and that counsel failed to contest the "list." Johnson has not cited any list or shown with specificity what list he refers to in the petition. Assuming that the "list" is the information about Martha Johnson's estate introduced at trial through the government's forensic auditor, Johnson has still not shown what

---

[30] *Richter*, 562 U.S. at 105.

[31] *Moore v. Mitchell*, 708 F.3d 760, 767 (6th Cir. 2013).

[32] *Hale v. Davis,* 512 F. App'x 516, 520–21 (6th Cir. 2013) (collecting cases).

[33] *Strickland*, 466 U.S. at 690–91.

[34] *Id.*

material facts were missing from the list. The petition mentions payments for cattle, farm expenses, and expenses related to the trailer park. However, Johnson has not shown what the amount of the expenses was or alleged that trial counsel failed to investigate these specific items. Without more, Johnson has not created a dispute about whether trial counsel's investigation of these financial details was unreasonable or overcome the "strong presumption that counsel's representation was within the wide range of reasonable professional assistance."[35]

Perhaps more importantly, the petition fails to allege prejudice. Johnson posits that the additional financial information may have changed the jury's view of motive; therefore, "the jury "could have" arrived at a different verdict. But this is merely to say that counsel's failing might have had some "conceivable" effect on the verdict.[36] Johnson's burden is to show that the "likelihood of a different result" is "substantial, not just conceivable."[37] The Court finds that Johnson has not carried this burden. The petition only speculates that the jury *could* have evaluated Johnson's motive differently had the jury also received evidence about the true net value of Martha Johnson's estate. Other evidence of pecuniary motive was strong in this case. The government showed that the gross value of Martha Johnson's estate was in excess of $1.1 million and the value of the life insurance proceeds on Martha Johnson was $102,000 alone. The proof at trial also showed that Johnson made no secret of his desire to develop his mother's real property and that upon her death he sold some of the property to a neighbor. There was also evidence that Johnson convinced his brother and minor nephew to disclaim any right to the

---

[35] *Richter*, 562 U.S. at 104.

[36] *Id.* at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently . . . .").

[37] *Id.*; *see also Howell v. Hodge*, 710 F.3d 381, 387 (6th Cir. 2013).

estate based on Johnson's false representations that the estate was worthless. Johnson alone received the full value of the estate. Therefore, even if Johnson could show that counsel failed to conduct a reasonable investigation into the assets and liabilities of the estate, Johnson has not shown that such a failure would have substantially affected the outcome of the trial. Therefore, Johnson's Motion under § 2255 must be **DENIED** as to his claim of ineffective assistance of trial counsel.

Moreover, Johnson has failed to show that appellate counsel's performance was constitutionally deficient or caused him any prejudice. As previously discussed, the petition contains only conclusory claims of ineffective assistance during the appellate phase. The petition does not allege how counsel failed to act reasonably in presenting Johnson's claims on direct appeal or how counsel failed to act reasonably in seeking certiorari before the Supreme Court. The only specific instance of deficient performance described in ground three is Johnson's allegation that counsel did not advise him properly about the deadlines for filing his § 2255 Motion. Even if the Court accepted this allegation as true, the petition does not show how the deficient advice prejudiced Johnson. "A motion filed pursuant to 28 U.S.C. § 2255 is subject to a one-year statute of limitations."[38] There is no dispute that Johnson filed his petition within the applicable limitations period. Therefore, the § 2255 Motion must be **DENIED** as to Johnson's claim of ineffective assistance of appellate counsel.

### III. Prosecutorial Misconduct: Ground Two

The only remaining claim in Johnson's petition is his allegation that the prosecution engaged in misconduct by "putting on inaccurate testimony at trial and withholding the information that the testimony was inaccurate." "Prosecutorial misconduct must be so

---

[38] *Jefferson v. United States*, 730 F.3d 537, 544 (6th Cir. 2013) (quoting *Benitez v. United States,* 521 F.3d 625, 629 (6th Cir. 2008)).

egregious as to deny a petitioner a fundamentally fair trial before collateral relief becomes available."[39]  "In order to obtain relief on a claim of prosecutorial misconduct, a petitioner must demonstrate that the prosecution's conduct was both improper and so flagrant as to warrant reversal."[40]  In the particular context of false testimony, "due process is denied where the state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured."[41]  "The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."[42]  The Sixth Circuit has described this kind of misconduct as a species of the *Brady* doctrine.[43]  In order to make out a claim of prosecutorial misconduct, Johnson must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.[44]

The Court holds that Johnson's petition fails to allege these elements.  Construing the petition liberally in Johnson's favor, the petition merely asserts that Winberry wrote to Mrs.

---

[39] *Johnson v. United States*, No. 94-5995, 1995 WL 27406, at *2 (6th Cir. Jan. 24, 1995) (citing *Donnelly v. DeChristoforo,* 416 U.S. 637, 643-45 (1974)); *see also Serra v. Mich. Dept. of Corrections*, 4 F.3d 1348, 1355-56 (6th Cir. 1993); *Smith v. Phillips,* 455 U.S. 209, 219 (1982) (stating that "the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.").

[40] *Moore v. Mitchell*, 708 F.3d 760, 799 (6th Cir. 2013) (quoting *Bates v. Bell*, 402 F.3d 635, 641 (6th Cir. 2005)).

[41] *Brooks v. Tenn.*, 626 F.3d 878, 894 (6th Cir. 2010) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935) (alterations omitted)).

[42] *Id.*

[43] *Stines v. United States*, 571 F. App'x 384, 388 (6th Cir. 2014) (citation omitted).

[44] *Id.* (citing *Brooks*, 626 F.3d at 894-95).

Johnson that he "said some things in court that was [sic] not true" and that the prosecution told him what to say. Johnson's claim is obviously a serious one. However, as already noted, Johnson did not bother to attach the letter to his petition or submit an affidavit from Mrs. Johnson to substantiate the petition's characterization of the Winberry letter. Even accepting that the petition accurately quotes the Winberry letter, the blanket statement from Winberry does not identify which statements from Winberry's testimony were false or what the truth about the statements is. Without actually showing which of Winberry's statements were not true, the petition has failed to show that the allegedly false statements were material and influenced the outcome of the trial. And even if the petition had alleged that Winberry testified falsely about facts material to Johnson's guilt, the petition does not state that the prosecution knew Winberry had given material, false testimony. In fact, the petition does not even allege that it was the government, as opposed to the defense on cross-examination, who elicited supposedly false testimony from Winberry. Nothing in the petition suggests "a reasonable likelihood that the false testimony could have affected the judgment of the jury."[45] The testimony of Rebecca Haynes-Johnson corroborated Winberry's most damaging testimony about Johnson's involvement in the murder of murder Martha Johnson. In the final analysis, the petition makes a very serious charge of misconduct but without stating the facts necessary to support the claim.[46] Therefore, the § 2255 Motion must be **DENIED** as to Johnson's claim of prosecutorial misconduct.

---

[45] *Brooks*, 626 F.3d at 894.

[46] *United States v. Castro*, 908 F.2d 85, 89 (6th Cir. 1990) ("[T]he defendant's 'bare allegations' of government misconduct before the grand jury do not make the necessary showing of prosecutorial misconduct.").

## IV. Appeal Issues

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right."[47]  No § 2255 movant may appeal without this certificate.  The COA must indicate the specific issue(s) that satisfy the required showing.[48]  A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[49]  A COA does not require a showing that the appeal will succeed.[50]  Courts should not issue a COA as a matter of course.[51]

In this case, for the reasons previously stated, the issues raised by Johnson in support of his § 2255 Motion lack substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ.  Therefore, the Court **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions.[52]  Rather, to appeal *in*

---

[47] 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b).

[48] 28 U.S.C. §§ 2253(c)(2) & (3).

[49] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation marks and citation omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same).

[50] *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011).

[51] *See Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005).

[52] *See Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997).

*forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a).[53]  Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.[54]  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.[55]

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith.  It is therefore **CERTIFIED**, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is **DENIED**.[56]

---

[53] *Id.* at 952.

[54] *See* Fed. R. App. P. 24(a)(1).

[55] *See* Fed. R. App. P. 24(a) (4)-(5).

[56] If Johnson files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days.

## CONCLUSION

Johnson's Motion to Vacate Judgment pursuant to 28 U.S.C. § 2255 is **DENIED**.  The Court further denies Johnson a certificate of appealability, denies leave to proceed in forma pauperis on appeal, and certifies that any appeal in this case would not be taken in good faith.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date:  August 1, 2016.